# CHARLESTON.

THE SUPERIOR PRODUCING AND REFINING CO. *v.* HANDLAN,
HEARNE & COMPANY *et al.*

)

(No. 5191)

Submitted October 6, 1925. Decided January 13, 1926.

CONTRACTS—*Contract in Violation of Chapter 55-B, Code, Unaffected by Elements of Estoppel, Unenforceable as Between Parties Thereto.*

> A contract made in violation of Chapter 55-B, Code, known as the Blue Sky Law, unaffected by the element of estoppel, is unenforceable in a court of law or equity, as between the parties to the illegal transaction.

Error to Circuit Court, Ohio County.

Suit by Superior Producing & Refining Company against Handlan, Hearne Company and others. Decree for defendants and plaintiff appeals.

*Affirmed.*

*J. H. Breman* and *Hubbard & Hubbard,* for Appellant.
*Poffenbarger, Blue & Dayton,* and *J. Bernard Handlan,* for Appellees.

LITZ, PRESIDENT:

The plaintiff, Superior Producing & Refining Company, is a Delaware corporation having its principal office in the city of Wheeling, West Virginia. The defendant, Handlan, Hearne & Company, a West Virginia corporation, is engaged in the business of broker in said city.

In June, 1918, W. C. Handlan and Elizabeth Handlan, his wife, D. H. Courtney, Z. F. Robertson and Basil L. Bullman incorporated under the laws of West Virginia the Vindicator Oil Company, with an authorized capital stock of $100,000.00, to take over certain oil and gas leases in the State of Texas, held by these individuals as partners. Before perfecting the plan, however, Bullman transferred his interest in

the leases to W. C. Handlan.   The remaining promoters then abandoned the Vindicator Oil Company and in lieu thereof organized the plaintiff corporation, having an authorized capital stock of $5,000,000.00, divided into shares of $5.00 each.

With the view of immediately disposing of a large amount of its capital stock, the plaintiff promptly arranged with the defendant, Handlan, Hearne & Company, to place it on the market.   Pursuant to such arrangement, Handlan, Hearne & Company, secured from the public subscriptions for stock on account of which it collected $125,548.75, and transmitted to the plaintiff $90,080.00.   This suit was instituted to recover: (1) of Handlan, Hearne & Company, as agent of the plaintiff, the balance of the $125,548.75; (2) of the defendant W. C. Handlan $10,000.00, the purchase price of stock alleged to have been subscribed for by him; and (3) of the remaining defendants about $30,000.00 for unpaid stock subscriptions obtained through Handlan, Hearne & Company.

On the ground that the venture did not prove successful, Handlan, Hearne & Company has repaid to the subscribers a large part of the fund which the plaintiff seeks to recover from it.   This defendant asserts the right, under its agreement with the plaintiff, and declares the purpose, in keeping with equity and good conscience, to restore to the disappointed subscribers the residue of said fund.   W. C. Handlan denies having subscribed to any of the stock.

The plaintiff has appealed from a decree of the circuit court dismissing its bill on the merits.

The plaintiff has never in any way attempted to comply with Chapter 55-B, known as the ''Blue Sky Law'', although, as shown by the bill, engaged in the issuance and sale of ''speculative securities'' within the meaning of the statute.

Section 2 of the Act defines the term ''speculative securities'', as including stocks, bonds, notes, contracts or other securities which shall, in their subscription, issuance, sale, transfer, negotiation or distribution, be represented to yield a profit to the purchaser or other transferee of more than eight per cent. on the price at which they are offered.

The prospectus, upon the representations of which the stock subscriptions in question were obtained, among other enticements, sets forth:

> "The Company's earnings as of October 1st, 1919, were at the rate of more than $575,000.00 per annum, which is more than 38% on the present outstanding capital stock.
>
> "These earnings are coming from the production of three wells on only two small leases. This production is not to be considered 'settled', but it is believed that other leases in the same pool will not only maintain this figure, but will greatly increase it."

Section 1 of the Act inhibits all persons co-partnerships, associations, domestic corporations, or foreign corporations doing business within this State, as principal or agent, from promoting by advertisement, circular, prospectus or any other form of public or general offering, inducement or pursuasion, the issuance, transfer, distribution, sale or negotiation of any speculative securities (subject to an exception not applying in this case), without first having filed with the auditor, duly verified by oath or affirmation, a statement containing: (a) a copy of the securities to be promoted; (b) a copy of the charter, or article of association, and by-laws, of the applicant, and such other information as may be necessary to establish the character of the promotion and validity and value of the securities; (c) a statement in substantial detail of the assets and liabilities of the person or company issuing such securities and of any company or person guaranteeing the same, including specifically the total amount of such securities and of any securities prior thereto; (d) copies of mortgages or other lien documents securing such securities, if any, and a competent appraisal or valuation of the property covered thereby with a specific statement of all prior liens thereon, if any; (e) a full statement of facts showing the gross and net earnings, actual or estimated, of any person or company issuing or guaranteeing such securities, or of any property covered by any such mortgage or lien; (f) all knowledge

or information in the possession of such promoter, relative to the character or value of such securities, or of the property or earning power of the person or company issuing or guaranteeing the same, including a statement that such promoter has fully investigated, and believes, the facts as stated to be reliable and true, with such exceptions, if any, as may be stated; (g) a copy of any prospectus or advertising matter which is to be used in connection with such promotion, which shall contain a clear and concise statement of the amount of money estimated as necessary to carry out the objects of the promotion; the price at which it is intended to sell securities; the amount of promotion expense, commissions and other overhead expenses contemplated, and the net amount to be derived by the company from the sale of each share of stock, bond, note, contract or other security; (h) the names and addresses of any agents by or through whom any of the securities are to be sold in this State; (i) the name and address of such promoter, including the names and addresses of all partners, if the promoter be a partnership, and the names and addresses of the directors or trustees and of any and all persons owning ten per centum or more of the capital stock, if the promoter be a corporation or association.

Section 5 requires the auditor to examine the statement and advise the applicant whether the securities may be sold or negotiated without violating the statute. Whereupon, if permission be granted by the auditor, the applicant may proceed to promote the sale of such securities, but not otherwise.

The alleged subscriptions, for which no stock was ever issued, having been obtained in plain violation of the statute, cannot form the basis of recovery in a court of law or equity. A contract made in violation of the Blue Sky Law is unenforceable, at least as between the parties to the illegal transaction, where, as in this case, no element of estoppel is involved. *Conway* v. *Bailey*, 91 W. Va. 324; 24 A. L. R. 535; 27 Id. 1176; 30 Id. 1340, digesting numerous cases from many States. The principle here involved was recently applied by this Court in the case of *The Raleigh County Bank* v. *Bank of Wyoming*, 130 S. E. 476; holding that a contract, either execu-

tory or executed, between two banks for the exchange of securities, made for the purpose of enabling one of them to carry a loan to its customer in violation of the banking law prohibiting a bank from lending to one person more than twenty per cent. of its capital, surplus and undivided profits, is illegal and that equity will not afford injunctive relief to either.

The wisdom of the law in its purpose to protect the public against "wild cat" securities, is thoroughly exemplified in this case. Notwithstanding the representations upon which the subscriptions were obtained, the bill admits that the oil wells, which were claimed to be flowing during the fall of 1919, in the spring of 1920 "no longer produced oil in paying quantities". Apparently, therefore, the venture has so far proved an utter failure.

The decree of the circuit court is

*Affirmed.*